Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 2822 | **DATE** | 4/4/2000 |
| **CASE TITLE** | J.H., et al. Vs. Gordon Johnson, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss the second amended complaint is denied in its entirety. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 05 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 108 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

J.H., et al., )
  )
    Plaintiffs, )
  ) No. 95 C 2822
v. )
  ) Judge George W. Lindberg
GORDON JOHNSON, et al., )
  )
    Defendants. )



## MEMORANDUM OPINION AND ORDER

Plaintiffs J.D. and J.H., minors, by and through their father and next friend, Todd Higgin, have filed a seven-count complaint against various former employees of the Illinois Department of Children and Family Services ("DCFS"). Named as defendants are Gordon Johnson ("Johnson"), former director of DCFS, Gary T. Morgan ("Morgan"), former DCFS Guardianship Administrator, Michael Horstman ("Horstman"), former Executive Deputy Director of DCFS, Ina Denton ("Denton"), former Deputy Director of DCFS, Gloria Lewis ("Lewis"), former Assistant Deputy Director of DCFS, Luis Soto ("Soto"), former DCFS Supervisor, and former DCFS caseworkers Lynn Crowther ("Crowther") and Amy Remington ("Remington").

Plaintiffs allege one federal and several state claims in their second amended complaint. In count I, plaintiffs allege civil rights violations pursuant to 42 U.S.C. §1983. *See* 42 U.S.C. §1983. In counts II through IV, plaintiffs allege statutory negligence (count II), statutory willful and wanton misconduct (count III), and statutory intentional misconduct (count IV), pursuant to the Children and Family Services Act and the Abused and Neglected Children Reporting Act. *See* 20 ILCS 505/5; 505/9; 505/22.2; 505/23; 505/34.1; 325 ILCS 5/4; 5/7; 5/7.3. In counts V

/08

95 C 2822

through VII, plaintiffs allege common law negligence (count V), common law willful and wanton misconduct (count VI), and common law intentional misconduct (count VII).

Defendants have moved to dismiss the second amended complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). The court is excluding all matters outside the pleadings. Fed. R. Civ. P. 12(b).

A claim should only be dismissed under Rule 12(b)(6) when "no relief may be granted under any set of facts that could be proved consistent with the allegations." Fed. R. Civ. P. 12(b)(6); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In determining whether a complaint satisfies this standard, the court must view the complaint in the light most favorable to the non-moving party. *See Hentosh v. Herman M. Finch Univ.*, 167 F.3d 1170, 1173 (7th Cir. 1999).

In count I, plaintiffs bring a §1983 claim asserting that their due process rights were violated. *See* 42 U.S.C. §1983. On January 18, 2000, the court denied defendants' motion to dismiss this claim in an earlier version of plaintiffs' complaint. Subsequently, plaintiffs filed their second amended complaint, which retained the claim stated in count I and added six claims based on state law. Ordinarily, the court would not entertain another motion by defendants to dismiss the claim stated in count I. However, in light of the recent Seventh Circuit decision in *Kitzman-Kelley v. Warner*, the court will reconsider its prior disposition of that motion. *See Kitzman-Kelley v. Warner*, 2000 WL 144337 (7th Cir. 2000).

In evaluating defendants' motion to dismiss the §1983 claim on the ground of qualified immunity, the court first considers whether the complaint states a cause of action. *See Kitzman-*

2

95 C 2822

*Kelley*, 2000 WL 144337, at *2 (citing *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)). To state a claim under §1983, "a plaintiff must allege that the defendant has acted under the color of state law and has deprived him of a right secured by the Constitution or laws of the United States." *Kitzman-Kelley*, 2000 WL 144337, at *2. In cases where a plaintiff asserts that state employee-defendants had an affirmative duty to protect the plaintiff against private violence, the plaintiff must also allege that a "special relationship" existed between the state and the victim, thus giving rise to a duty of protection. *Id.* at *4. In addition, a plaintiff must allege personal involvement of the individual defendants, as "there is no respondeat superior liability in the §1983 context." *Id.* Moreover, a plaintiff must allege that the individual defendants acted with "deliberate indifference" in their failure to adequately protect the plaintiff. *Id.* (citing *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997)).

The complaint does aver that defendants acted under the color of state law; that the complaint is sufficient in this regard is uncontested. The complaint also alleges that defendants deprived plaintiffs of their due process rights under the Constitution; defendants do not challenge the complaint on this ground. In addition, the complaint adequately alleges that a "special relationship" existed between the state and plaintiffs; defendants do not contest the adequacy of the complaint in this regard. Defendants do, however, contend that the complaint fails to allege personal involvement of the named defendants. In addition, defendants claim that the complaint fails to allege that the named defendants acted with "deliberate indifference."

95 C 2822

Defendants' assertion that the complaint fails to allege personal involvement is without merit. Several paragraphs of the second amended complaint specifically allege such involvement. For example, paragraph 77 of the second amended complaint states:

> 77. Defendants JOHNSON, HORSTMAN, DENTON, LEWIS, MORGAN, SOTO, REMINGTON and CROWTHER either were fully aware of or should have been aware that William and Sandra White were not licensed to act as foster parents, that there were serious concerns as to the psychological stability of William White, that J.H. was being sexually abused in the White home, that the conditions in the home made the placement improper to promote her health and development, and that the placement was destructive to her mental, physical, and emotional well-being and that she was at risk of sexual and physical abuse from other residents of the home. Despite this knowledge, Defendants JOHNSON, HORSTMAN, DENTON, MORGAN, LEWIS, SOTO, REMINGTON, and CROWTHER failed to remove J.H. from the White home. . . .

Similarly, paragraphs 145 and 146 of the second amended complaint state:

> 145. Defendants JOHNSON, HORSTMAN, DENTON, LEWIS, SOTOS, REMINGTON AND CROWTHER either were fully aware of [sic] should have been aware that Richard and Betty Hill were not licensed to act as foster parents, that J.D. was being sexually abused in the Hill home, and that the conditions in the home made the placement improper to promote his health and development, and that the placement was destructive to his mental, physical, and emotional well-being. Defendants further knew that McKinley had a document [sic] history of placing children in unsafe, abusive, and unsanitary foster homes.
>
> 146. Defendants MORGAN, JOHNSON, HORSTMAN, DENTON, LEWIS and SOTO, knew or should have known that J.D. was likely to be placed in the hands of foster parents who would abuse him. . . .

Moreover, various paragraphs in the second amended complaint fully describe the alleged activities of each individual defendant. This court finds that the language of the second amended complaint, portions of which have been quoted above, satisfies the requirement that the complaint allege defendants' personal involvement.

4

95 C 2822

Defendants also claim that the exhibits attached to the second amended complaint belie defendants' personal involvement by contradicting the allegations in the complaint, in that "there are no exhibits attached... which supposedly relate to the issue of personal involvement." Defendants' position is baseless; the mere lack of exhibits attached to a complaint to demonstrate a particular proposition does not result in a "contradiction."

Defendants' claim that the complaint fails to allege deliberate indifference is likewise without merit. The complaint expressly alleges that defendants were deliberately indifferent in several places. For example, paragraph 151 of the second amended complaint states:

> 151. Defendants MORGAN, JOHNSON, HORSTMAN, DENTON, LEWIS, SOTO, REMINGTON and CROWTHER substantially departed from accepted professional standards, [sic] and practices throughout the course of the acts and omissions described above; and were also deliberately indifferent to J.D.'s well-being and were willful and wanton and grossly negligent in their care for him.

Similarly, paragraph 85 of the second amended complaint states:

> 85. Defendants MORGAN, JOHNSON, HORSTMAN, DENTON, LEWIS, SOTO, REMINGTON and CROWTHER substantially departed from accepted professional standards and practices and failed to exercise appropriate professional judgment throughout the course of the acts and omissions described above. Further, they failed to exercise any reasonable degree of supervision over the placement of J.H. and were also deliberately indifferent to J.H.'s well-being and were willful and wanton and grossly negligent in the care for her. . . .

Whether or not plaintiffs will ultimately be able to prove that defendants had personal involvement and were deliberately indifferent in carrying out their duties to protect J.H. and J.D. is not at issue at this stage of the litigation. The only issue is whether the second amended complaint contains sufficient averments to state a claim under §1983. Viewing the complaint in

5

95 C 2822

the light most favorable to plaintiffs, the court finds that the complaint does state a claim under §1983.

After determining that a complaint states a claim under §1983, "the court must then address whether the defendants are entitled to the defense of qualified immunity." *Kitzman-Kelley*, 2000 WL 144337, at *5. The defense of qualified immunity "protects government officials from monetary liability when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kitzman-Kelley*, 2000 WL 144337, at *2 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The defense of qualified immunity is defeated when "an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

In addition to providing government officials with a shield from monetary liability, qualified immunity also grants "immunity from suit." *See Kitzman-Kelley*, 2000 WL 144337, at *2 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, defendants would be entitled to a dismissal of count I if their alleged actions, if proven to be true, would not have violated clearly established constitutional or statutory rights of which a reasonable person would have known.

The Seventh Circuit, relying on *Youngberg v. Romeo* and *Doe v. New York City Department of Social Services*, held that the right of a child not to be placed with foster parents that are known to have the propensity to neglect or abuse them was clearly established in 1986. *See K.H. through Murphy v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990); *See also Youngberg v.*

95 C 2822

*Romeo*, 457 U.S. 307 (1982); *Doe v. New York City Dept. Soc. Serv.*, 649 F.2d 134 (2d Cir. 1981). In *Morgan*, the Seventh Circuit also held that a state "could not avoid the responsibilities which that decision [*Youngberg*] had placed on it merely by delegating custodial responsibility to private persons." *Morgan*, 914 F.2d at 851. During the years 1988 and 1989, the period of time during which the minor plaintiffs were abused, this right continued to be clearly established, as evidenced by the Seventh Circuit's 1990 recognition of it in *Morgan*. See *Morgan*, 914 F.2d at 852.

The second amended complaint alleges that defendants knew of the abusive situations into which plaintiffs were being placed. Plaintiffs had, at the time that they were abused, a clearly established constitutional right not to be placed in such situations. If plaintiffs can prove their allegations, qualified immunity would not bar recovery. Accordingly, defendants' motion to dismiss count I of the second amended complaint is denied.

Defendants also urge this court to dismiss counts II through VII of the second amended complaint, asserting immunity from state law claims. Defendants do not assert that any of the six state-based claims are insufficiently pled. Rather, defendants seek to dismiss the claims under alternative theories of absolute immunity, sovereign immunity, and public official immunity. This court must apply the law of the State of Illinois in its consideration of defendants' motion to dismiss the six state-law claims, as "[s]tate rules of immunity are binding in federal court with respect to state causes of action." *Benning v. Bd. of Regency Universities*, 928 F.2d 775, 779 (7th Cir. 1991).

95 C 2822

Illinois recognizes the doctrine of absolute immunity. *See Blair v. Walker*, 64 Ill.2d 1, 6 (1976). Absolute immunity "rests upon the idea that conduct which otherwise would be actionable is permitted to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to an injured party." *Jurgensen v. Haslinger*, 295 Ill.App.3d 139, 141 (3rd Dist. 1998)(citing *Thomas v. Petrulis*, 125 Ill.App.3d 415, 418 (2d Dist. 1984)). Historically, the doctrine of absolute immunity "embraces statements made in the course of judicial or quasi-judicial proceedings." *Bushell*, 291 Ill.App.3d at 561 (citing *Parillo, Weiss & Moss v. Cashion*, 181 Ill.App.3d 920, 925 (1st Dist. 1989)). While the scope of the doctrine has expanded since its initial recognition in 1870, it is unclear exactly what public officials enjoy its protection. *See Spaids v. Barrett*, 57 Ill. 289 (1870).

Defendants have not cited, and this court has not discovered, any controlling Illinois state court precedent with regard to the applicability of absolute immunity to the facts presented in the case at bar. In the absence of any controlling authority, this court believes that Illinois courts would likely apply the three-factor test announced by the United States Supreme Court in *Butz v. Economou* to determine whether absolute immunity shields defendants from being sued in this context. *See Butz v. Economou*, 438 U.S. 478, 508-512 (1978)(cited by *Mother Goose Nursery School v. Sendak*, 770 F.2d 668, 671)(7th Cir. 1985). The *Butz* test was initially developed to determine whether the doctrine of absolute immunity shielded federal officials of the executive branch from personal liability for alleged violations of citizens' constitutional rights. *See Butz*, 438 U.S. at 480. Seven years after the three-factor test was announced by the Supreme Court, the

8

95 C 2822

Seventh Circuit applied it to determine whether the Indiana Attorney General was entitled to absolute immunity from §1983 claims. *See Mother Goose*, 770 F.2d 668, 669 (7th Cir. 1985).

Under the *Butz* test, the three factors to be considered in determining whether absolute immunity applies are: (1) whether there is a historical or common law basis for the immunity; (2) whether the official's functions subject him or her to the risk of vexatious litigation; (3) whether there are checks to prevent the official's abuse of authority, including the opportunity to correct errors on appeal. *See Butz v. Economou*, 438 U.S. 478, 508-512 (1978)(cited by *Mother Goose Nursery School v. Sendak*, 770 F.2d 668, 671)(7th Cir. 1985)).

There is no historical basis for shielding public child-welfare agency officials from liability from state-law claims. As the Seventh Circuit noted in *K.H. through Murphy v. Morgan*, "absolute immunity has been confined to participants in judicial or judicial-type proceedings, such as judges, witnesses, and prosecutors." *K.H. through Murphy v. Morgan*, 914 F.2d 846, 854 (7th Cir. 1990). Defendants have offered no compelling authority to suggest that absolute immunity has been expanded beyond the context of judicial or quasi-judicial proceedings to shield defendants from liability in the instant case. To the contrary, substantial authority suggests that Illinois DCFS officials are not entitled to absolute immunity from personal liability. *See K.H. through Murphy v. Morgan*, 914 F.2d 846, 854 (1990)(rejecting DCFS employee-defendants' claim of absolute immunity from §1983 claim); *Hebein v. Young*, 37 F.Supp. 2d 1035, 1047 (N.D. Ill. 1998)(granting DCFS employee-defendants' claim of absolute immunity from §1983 claim only as to the steps taken to initiate a wardship hearing); *Goetz v. Mt. Sinai Hosp. Corp.*, 1992 WL 162975, at *9 (N.D. Ill. 1992)(rejecting DCFS employee-defendants'

9

95 C 2822

claim of absolute immunity from §1983 claim and from a malicious prosecution claim under Illinois state law).

Turning to the second factor of the *Butz* test, while DCFS officials are in such a position as to be subject to vexatious litigation, this fact alone is insufficient to warrant absolute immunity. *See Morgan*, 914 F.2d at 854. The Seventh Circuit has specifically denied the applicability of absolute immunity on this basis, holding "the suggestion that caseworkers should enjoy absolute immunity merely because they are quite likely to be sued does not distinguish them from police officers or other public officers whose duties require them to interfere with people's liberty or property. . ." *Id.*

Finally, the decisions of DCFS officials are not subject to a system of review to prevent abuses of power. Therefore, in contrast to traditional state officials who have absolute immunity, DCFS officials have greater potential to abuse their powers. If the protections afforded by absolute immunity were to be extended to shield DCFS officials from suit, the exercise of their powers would be virtually unfettered.

For these reasons, defendants' motion to dismiss counts II-VII of the second amended complaint on the ground of absolute immunity is denied.

In the alternative, defendants claim to be immune from all state-law claims under the doctrine of sovereign immunity. Sovereign immunity "'protects the State from interference in its performance of the functions of government and preserves its control over State coffers.'" *Senn Park Nursing Ctr. v. Miller*, 104 Ill.2d 169, 188 (1984) (quoting *S.J. Groves & Sons Co. v. State*, 93 Ill.2d 397, 401 (1982)). However, the doctrine of sovereign immunity does not

10

protect a state agent who is alleged to have violated statutory or constitutional law. *See Senn Park Nursing Ctr. v. Miller*, 104 Ill.2d 169, 188 (1984)("While legal official acts of State officers are in effect acts of the State itself, illegal acts performed by the officers are not, and when a state officer performs illegally. . . a suit may be maintained against the officer and is not an action against the State of Illinois. . . . [T]he state cannot justifiably claim interference with its functions when the act complained of by plaintiffs is unauthorized by statute."); *City of Springfield v. Allphen*, 74 Ill.2d 117, 124 (1979)(quoting *Schwing v. Miles*, 367 Ill. 436, 441 (1937)("Such violation, if it occurs, is by a State officer or the head of a department of the State, and such officer or head may be restrained by a proper action instituted by a citizen."); *Currie v. Lao*, 198 Ill. App. 3d 625, 628 (3rd Dist. 1990)("[The doctrine of sovereign immunity] affords no protection to an agent or employee of the State who acts in violation of statutory or constitutional law or in excess of his authority."); *CGE Ford Heights, L.L.C., v. Miller*, 306 Ill. App. 3d 431, 436 (1st Dist. 1999)("There is no immunity when a complaint alleges that a state agent acted in violation of statutory or constitutional law or in excess of his authority.")(citing *Senn Park*, 104 Ill.2d at 188).

In the case at bar, counts II through IV of the second amended complaint allege that defendants breached duties imposed upon them by the Children and Family Services Act and by the Neglected Children Reporting Act. *See* 20 ILCS 505/5; 505/9; 505/22.2; 505/23; 505/34.1; 325 ILCS 5/4; 5/7; 5/7.3. Counts V, VI, and VII also allege violations of the Children and Family Services Act and the Neglected Children Reporting Act to demonstrate that defendants breached duties imposed upon them at common law. *See id.* Thus, all six state-law claims

95 C 2822

contain allegations that defendants violated state statutes. If plaintiffs can prove their allegations, the doctrine of sovereign immunity would not shield defendants from liability for the breach of these statutes. Accordingly, defendants' motion to dismiss counts II through VII of the second amended complaint on the ground of sovereign immunity is denied.

Defendants finally assert public official immunity with respect to the state-law negligence claims (counts II and V) of the second amended complaint. Public official immunity "'rests on the theory that government officials should not be impeded from acting in ways they perceive are in the public's best interest because of fears of personal liability." *Janes v. Albergo*, 254 Ill.App.3d 951, 957 (5th Dist. 1993) (quoting *Campbell v. White*, 207 Ill.App.3d 541, 543 (4th Dist. 1991)). However, public official immunity only applies where "the duty owed is to the public generally, not to an individual." *Currie v. Lao*, 198 Ill.App.3d 625, 631 (3rd Dist. 1990).

In the instant case, plaintiffs allege that defendants owed an affirmative duty of protection to plaintiffs by virtue of the custodial relationship between the state and plaintiffs. The duties owed by defendants are owed only to the individual plaintiffs who are taken into custody by the State. Therefore, public official immunity does not apply. *See Currie*, 198 Ill.App.3d at 631.

Moreover, plaintiffs allege that defendants knowingly allowed minor plaintiffs to be placed into abusive foster homes. If plaintiffs ultimately prove that allegation, it would be absurd to allow defendants to evade liability for their conduct on the basis of an immunity doctrine that, historically, was only designed to protect public officials who believed that they were acting in the best interest of the public. *See Albergo*, 254 Ill.App.3d at 957. Therefore,

12

95 C 2822

defendants' motion to dismiss counts II and V of the second amended complaint on the ground of public official immunity is denied.

ORDERED: Defendants' motion to dismiss the second amended complaint is denied in its entirety.

ENTER:

GEORGE W. LINDBERG
District Judge

DATED: **APR 0 4 2000**